IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| In re: | ) | C/A NO.   3:23-mc-216-JFA |
| | ) | |
| South Carolina Department of Parks, Recreation and Tourism, | ) ) ) | |
| | ) | |
| *Movant.* | ) ) | |
| In re: C/A No. 1:21-md-03010 (PKC) | ) ) | |
| In re Google Digital Advertising Antitrust Litigation | ) ) ) ) | |
| In re: C/A No. 1:21-cv-06841 (PKC) | ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO QUASH** |
| State of Texas, et al., | ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| Google, LLC, | ) ) | |
| *Defendant.* | ) ) ) | |

The South Carolina Department of Parks, Recreation and Tourism (SCPRT), through undersigned counsel and pursuant to Fed. R. Civ. P. 45(d)(3), Local Civil Rules 7.04 and 7.05, and its limited special appearance, submits this memorandum in support of its motion to quash the subpoena issued by Google, LLC to SCPRT.

### INTRODUCTION

Google, the technology behemoth at the center of an antitrust MDL in the Southern District of New York, seeks to use federal court power to force SCPRT, a sovereign South Carolina entity, to produce confidential records under the threat of contempt. As the Fifth Circuit recently recognized, sovereign immunity shields states from federal court subpoenas. *Russell v. Jones*, 49

1

F.4th 507, 515–16 (5th Cir. 2022). Whether states are subject to these subpoenas is an open question in the Fourth Circuit. *Va. Dept. of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). But there is no sound reason to depart from the Fifth Circuit's thorough decision, or from Fourth Circuit and other circuit precedent which compels the same result. SCPRT therefore respectfully requests that this Court quash Google's subpoena.

## FACTUAL/PROCEDURAL BACKGROUND

On December 16, 2020, nine states led by Texas sued Google in the Eastern District of Texas for violating federal antitrust and related state laws. [SDNY Dkt. No. 1.][1] South Carolina joined as a plaintiff on August 4, 2021. [SDNY Dkt. No. 138.] The case was transferred to the *In re Google Digital Advertising Antitrust Litigation* MDL in the Southern District of New York on August 13, 2021. [SDNY Dkt. No. 140.] The state plaintiffs' causes of action fall into two categories: (1) Counts I–IV asserting violations of 15 U.S.C. §§ 1 and 2 (the Sherman Act) and seeking only injunctive relief pursuant 15 U.S.C. § 26 (the Clayton Act), and (2) Counts V and VI asserting violations of state antitrust and unfair competition laws. [*See generally* MDL Dkt. No. 195.] The state law claims are stayed. [SDNY Dkt. No. 209 at 1 n.1.][2] Thus, the only active claims are those to enjoin violations of the Sherman Act.

In its order largely denying Google's motion to dismiss the Sherman and Clayton Act claims, the district court summarized the states' allegations as follows:

> They allege that Google has monopolized or attempted to monopolize various markets related to online display ads (Counts I and II) and unlawfully used its market power to tie the sale of Google's "ad server," a tool used by publishers to manage their inventory of display ads, to Google's "ad exchange," a distinct

---

[1] "SDNY Dkt." refers to the CM/ECF docket for *Texas v. Google*, No. 1:21-cv-06841 (PKC) in the Southern District of New York. "MDL Dkt." Refers to the CM/ECF docket for *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC) pending before the same court.

[2] SCPRT cites to the individually numbered pages and not to the CM/ECF page number.

2

product that conducts auctions for the sale of display ads (Count III).  They also allege that Google entered into an unlawful restraint of trade with non-parties Facebook, Inc. and Facebook Ireland Limited ("Facebook") (Count IV).

[*Id.* at 1; *see also id.* at 5–13 (providing a summary of Google's digital advertising products involved in the litigation).]  The state attorneys general brought these claims "as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective states." [MDL Dkt. No. 195 at ¶ 31.]  While the district court held that the state plaintiffs "do[] not act in the capacity of a sovereign but as a private enforcer" when seeking injunctive relief [SDNY Dkt. No. 209 at 84], they still possess *parens patriae* standing, *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 39–40 (D.D.C. 2021).  When acting in this capacity, the South Carolina Attorney General does not represent any South Carolina agencies or departments, including SCPRT, and does not have possession, custody, or control over their records. *See* H.B. 3866, 125th Gen. Assemb., Reg. Sess. (2023).

Google served an expansive third-party subpoena on SCPRT pursuant to Fed. R. Civ. P. 45 seeking the department's online advertising records. [Exhibit 1.]  The subpoena has 118 defined terms and demands that SCPRT produce, under the threat of contempt, 27 categories of records which will fully expose SCPRT's proprietary and highly successful digital advertising campaign. [*See generally id.*]  Nearly all the records sought constitute trade secrets which are exempt from production under the South Carolina Freedom of Information Act. *See* S.C. Code Ann. § 30-4-40(1).  Google originally demanded that the records be produced by February 26, 2023 [Ex. 1 at 1], but it agreed to extend SCPRT's deadline to respond by 30 days to March 28, 2023.  SCPRT now timely brings this motion to quash the subpoena on the ground that it violates SCPRT's sovereign immunity.

## LAW/ANALYSIS

**I. SCPRT's Sovereign Immunity Bars Google's Subpoena.**

**A. States are immune from suits brought by private parties in federal court.**

The individual states in this country "retain 'a residuary and inviolable sovereignty'" and "are not relegated to the role of mere provinces or political corporations[.]" *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245). This sovereignty began with the Declaration of Independence, wherein the states declared themselves to be "Free and Independent States" which were entitled to "all the rights and powers of sovereign states." *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493 (2019) (citations and quotations omitted). Given their sovereign status, "[t]he Founders believed that both 'common law sovereign immunity' and 'law-of-nations sovereign immunity' prevented States from being amenable to process in any court without their consent." *Id.* Indeed, the states' immunity from private suit is an "integral part" of their sovereignty. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751–52 (2002). While states gave up some immunity by joining the union, the Constitution "did not disturb States' immunity from private suit" and in fact "enshrine[d] this principle in our constitutional framework." *Id.* at 752. State sovereign immunity from private suit thus is a "historically rooted principle embedded in the text and structure of the Constitution." *Franchise Tax Bd. of Cal.*, 139 S. Ct. at 1499.

The sovereign immunity enjoyed by the states prohibits federal courts from hearing suits brought against non-consenting states by their own citizens or citizens of another state. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). Though it often is called "Eleventh

4

Amendment Immunity,"[3] a state's sovereign immunity "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden*, 527 U.S. at 728. "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle[.]" *Id.* at 728–29; *see also Blatchford v. Native Vill, of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms . . . .").

State sovereign immunity largely is a matter of federalism. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It preserves the respect owed to states as joint sovereigns with the federal government. *Fed. Mar. Comm'n*, 535 U.S. at 765; *Alden*, 527 U.S. at 714; *see also Pennhurst*, 465 U.S. at 99–100 ("[B]ecause of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of the federal judicial power has long been considered to be appropriate in a case such as this.") (quotation omitted). This dual sovereignty was a "great innovation" of the founders: "[O]ur citizens would have two political capacities, one state and one federal, each protected from incursion by the other—a legal system unprecedented in form and design." *Printz v. United States*, 521 U.S. 898, 920 (1997) (quotation omitted).

**B.  SCPRT is an immune state entity.**

State sovereign immunity covers the state and, depending on the nature of their relationship, its agencies and instrumentalities. *Regents of the Univ. of Cali. v. Doe*, 519 U.S. 425, 429 (1997). An agency is immune if a judgment against the agency would be paid from the state's

---

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.

treasury. *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001). No other factor need be considered if the state's treasury might pay a judgment. *Harter v. Vernon*, 101 F.3d 334, 339 (4th Cir. 1996). To meet this requirement, the state treasury need not be liable for a judgment in *this* case; it is enough that there is *potential* liability. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 545 (4th Cir. 2014). Here, SCPRT receives annual appropriations from the General Assembly. *See* S.C. Code Ann. § 51-1-70. The General Assembly appropriated $127,942,557 to SCPRT for 2022–2023. 2022 Act No. 239, Part 1A, § 49. Further, South Carolina law requires the state to indemnify agencies and their directors, officers, and employees for uninsured losses or judgments incurred as a result of the claim or suit. S.C. Code Ann. § 1-11-445. In this instance, should SCPRT or its officers or employees be faced with contempt proceedings related to Google's subpoena, the state itself must indemnify them for any monetary sanctions the court may award. It therefore is possible that any judgment against SCPRT, which could include fines for contempt if SCPRT does not comply with the subpoena, would be paid using state funds. *See Rettew v. S.C. Dep't of Parks, Recreation & Tourism*, No. 9:10-0282-MBS, 2010 WL 2851094, at *2 n.1 (D.S.C. July 16, 2010) ("It is undisputed that [SC]PRT draws from the South Carolina treasury for its operating costs. The court concludes that, as a state agency, [SC]PRT is treated as the state itself for the purposes of the Eleventh Amendment, and thus shares the same immunity.").

Even if the Court were to find that the state's treasury is not implicated, SCPRT still is entitled to sovereign immunity under the "state dignity factors." *See Hutto*, 773 F.3d at 546. These factors include "(1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity." *Cash*, 242 F.3d at 224. Each factor compels a finding that SCPRT is immune. As to

the first factor, the State exercises substantial control over the department. SCPRT is a statutory part of the executive branch, S.C. Code Ann. § 1-30-10(A)(16); its director is appointed by the governor with the advice and consent of the senate, *id.* § 51-1-10(a); the director is subject to removal by the governor, *id.*; the governor may require the creation of ad hoc committees within the department, *id.* § 1-30-10(D); the department submits reports as required annually to the General Assembly and the State Fiscal Accountability Authority, *id.* §§ 51-1-60, 1-30-10(G); the department's powers are delineated by statute, *id.* § 51-1-60; and other functions and divisions may be assigned by legislative action or by the State Fiscal Accountability Authority, *id.* §§ 51-1-60, 51-1-60. As to the second, SCPRT's focus is statewide and not localized. *E.g.*, S.C. Code Ann. § 51-1-60(b) (authorizing SCPRT "to promote the general health and welfare of the people of the State by developing and expanding new and existing recreational areas, including the existing State Park System"); *id.* § 51-1-60(c) (authorizing SCPRT "to develop a coordinated plan utilizing to best advantage the natural facilities and resources of the State as a tourist attraction"); *id.* § 51-1-60(d) (authorizing SCPRT "to include in its plan the preservation and perpetuation of our state's rich historical heritage"); *id.* § 51-1-60(j) (authorizing SCPRT "to promote economic diversity in all areas of the State."). Finally, and as detailed above, South Carolina treats SCPRT as an executive branch agency answerable to the governor. *See, e.g., Cash*, 242 F.3d at 224 (recognizing that the inquiry for the final factor—the manner in which State law treats the entity—overlaps with the analysis of state control versus local autonomy); *Knoke v. S.C. Dep't of Parks, Recreation & Tourism,* 324 S.C. 136, 144, 478 S.E.2d 256, 260 (1996) (recognizing that SCPRT is entitled to certain immunities under the South Carolina Tort Claims Act, "the exclusive civil remedy for governmental torts").

SCPRT therefore is an immune state entity either because of a judgment's impact on the state treasury or under the "state dignity factors."

### C. Google's subpoena is a suit from which SCPRT is immune.

The Fifth Circuit has concluded that states are immune from federal court subpoenas. In parallel cases, the Fourth Circuit and others have recognized that subpoenas in state court are suits against the federal government. Other circuits likewise agree that subpoenas are suits against Indian tribes. This Court should follow these cases and find that Google's subpoena violates SCPRT's sovereign immunity.

Sovereign immunity is an immunity from suit, not merely a defense to liability. *Fed. Mar. Comm'n*, 535 U.S. at 766. It "avoid[s] the indignity of subjecting a State to the coercive process of judicial tribunals at the insistence of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (quotation omitted). The type of relief sought is "irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." *Id.* Suits from which the government is immune include all instances where a judgment would be paid by public funds, would "interfere with the public administration," or would "restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (cleaned up); *see also Pennhurst*, 465 U.S. at 101 n.11 (citing this language from *Dugan* in a case involving state sovereign immunity). "Interpreting the term 'suit' broadly comports with the core notion of sovereign immunity" that courts lack jurisdiction to force a non-consenting government to act. *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 931 (8th Cir. 1996); *see also Weston v. City Council of Charleston*, 27 U.S. 449, 464 (1829) ("The term ['suit'] is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him. The modes of proceeding may be various, but if a right

is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit.").

Suits from which the state is immune necessarily includes subpoenas. "[T]he indignity that sovereign immunity was designed to prevent may arise *either* when the state is a defendant *or* when its sovereign prerogatives are subjected to individuals through coercive judicial process." *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022) (emphasis in original). Because sovereign immunity prefers substance over form, it applies to states as third parties to litigation and not just as defendants. *Id.* The interests sovereign immunity protects—the state's dignity and authority over its prerogatives—"are no less interesting when a sovereign is served with a *subpoena duces tecum* instead of a complaint." *Id.* at 515; *see also id.* at 515–16 ("When haled into court on pain of contempt and forced to produce its papers (and litigate about whether it has to), it is no succor to the sovereign that it is not named in the complaint."). Forced compliance with a subpoena therefore "violates the inviolable sovereignty retained by the states." *Id.* at 515 (quotations omitted). As a result, states are immune from subpoenas issued by private parties in federal court. *Id.*; *see also Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1161 (10th Cir. 2014) (stating in dicta regarding state subpoenas that Tenth Circuit precedent "may well shield a state agency from discovery in federal court").

This result is compelled by the established body of case law recognizing that federal and tribal sovereign immunity prohibit subpoenas. For example, the federal government is immune from subpoenas in state court proceedings, even if the case is removed to federal court on diversity. *Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989); *see also Puerto Rico v. United States*, 490 F.3d 50, 61 n.6 (1st Cir. 2007); *Russell*, 49 F.4th at 515; *In re Elko Cnty. Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Houston Bus. J., Inc. v. Off. of Comptroller of Currency*, 86

9

F.3d 1208, 1211 (D.C. Cir. 1996). Indian tribes similarly are immune from subpoenas. *E.g.*, *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105–06 (8th Cir. 2012); *Bonnet*, 741 F.3d at 1160; *see also Miccosukee Tribe of Indians of Fla. v. Bermudez*, 92 So. 3d 232, 234 (Fla. Ct. App. 2012) ("[T]he Tribe has sovereign immunity from suit, and this extends to protect the Tribe from complying with subpoenas."). In both instances, a subpoena's coercive effect renders it a suit for purposes of sovereign immunity. *See Boron Oil*, 873 F.2d at 70–71 ("[T]he nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding interferes with the public administration and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.") (cleaned up, quotations omitted); *Alltel Commc'ns*, 675 F.3d at 1103 (holding subpoenas "command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with government functions is apparent.").

These federal and tribal subpoena immunity cases apply with equal force to SCPRT's state sovereign immunity. *Russell*, 49 F.3d at 518–19; *see also Lewis v. Clarke*, 581 U.S. 155, 164 (2017) ("The protection offered by tribal sovereign immunity here is no broader than the protection afforded by state or federal sovereign immunity."); *Belknap v. Schild*, 161 U.S. 10, 18 (1896) (holding states are "as exempt as the United States are from private suit"); *Bonnett*, 714 F.3d at 1160 ("But in order to hold the Tribe is not immune in this case, we would have to define the same term, 'suit,' to mean two different things, depending on whether judicial process is being exercised against the United States or an Indian tribe. This we are not inclined to do."). Binding Fourth Circuit precedent in *Boron Oil* holds that a subpoena on the federal government is a suit. *Boron*

*Oil*, 873 F.2d 67, 70–71.  Other case law confirms this is true for a subpoena to an Indian tribe. *Alltel Commc'ns*, 675 F.3d at 1105–06; *Bonnet*, 741 F.3d at 1160.  There is no basis to conclude that a subpoena becomes something less simply because it is served on a state, which under the Constitution is a joint sovereign with the federal government. *See Alden*, 527 U.S. at 714.

The few pre-*Russell* decisions finding that state sovereign immunity does not bar a federal court subpoena did not recognize that subpoenas to the state impose the same burden as subpoenas to the federal government or the coercive effect of a contempt citation which will be paid out of the state treasury.[4] *E.g.*, *Arista Records, LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246, at *3–5 (W.D. Va. Dec. 22, 2008); *Jackson v. AFSCME Local 196*, No, 3:07CV0471 (JCH), at *2–3 (D. Conn. April 25, 2008); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1078–79 (E.D. Cal. 2008); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634–35 (D. Nev. 1986).  *But see Estate of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229 (E.D. Cal. 2006) ("The federal subpoenas seeking the production of documents by the State are barred on the ground that the State is entitled to sovereign immunity.").  The Seventh Circuit reached the issue twice in dicta, and in both cases the court's cursory analysis similarly failed to address the arguments made here. *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008).  The Eight Circuit's brief opinion in *In re Missouri Department of Natural Resources*, 105 F.3d 434 (8th Cr. 1997), likewise did not reach the arguments presented to this Court. *Id.* at 836.  And when the

---

[4] These courts often characterized a subpoena on the state as a mere discovery request. Discovery is limited to parties to an action who lawfully are before the Court. Fed. R. Civ. P. 26(b)(1).  A subpoena, on the other hand, subjects a *non*-party to a court's jurisdiction under the threat of contempt. *See generally* Fed. R. Civ. P. 45; *see also* 9A Wright & Miller, *Federal Practice & Procedure* § 2451 (2d ed. 1995) ("A 'subpoena' is a mandate lawfully issued in the name of the court . . . .").

11

Eighth Circuit later considered them in the context of tribal sovereign immunity, the court backtracked from its prior holding:

> [W]e are unwilling to predict how the Supreme Court would decide a case in which disruptive third-party subpoenas that would clearly be barred in a State's own courts are served on a state agency in private federal court civil litigation. Based upon the reasoning in cases such as *Boron Oil*, the Court might well conclude that the Eleventh Amendment applies, or it might apply a broader form of state sovereign immunity as a matter of comity, which would likewise apply to claims of tribal immunity.

*Alltel Commc'ns*, 675 F.3d at 1104–05.

The most recent pre-*Russell* decision of which SCPRT is aware is Judge Norton's order in *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240 (D.S.C. 2020). That case involved claims pursuant to the Resource Conservation and Recovery Act and the Clean Water Act stemming from the discharge of plastic nurdles into Charleston Harbor. The plaintiffs alleged the nurdles were discharged from property Frontier Logistics licensed from the South Carolina State Ports Authority. *Id.* at 245–46. They ultimately subpoenaed the Ports Authority, which is an immune state entity, for records related to plastic pellet discharge. *Id.* at 247. The Ports Authority moved to quash the subpoena under the Eleventh Amendment and state sovereign immunity. *Id.* at 248.

The court acknowledged that "the doctrine of federal sovereign immunity precludes a state court from compelling a third-party federal agency to act in compliance with the subpoena." *Id.* at 249. It also correctly observed that federal sovereign immunity from suit in state court is rooted in federal supremacy. *Id.* at 249–50. But the court dismissed the federal subpoena cases as irrelevant because "the underlying principle of federal supremacy does not apply in the context of state sovereign immunity," which is based upon federalism and treating the state and federal governments as joint sovereigns. *Id.* at 250. The court then cited *Allen*, *Arista Records*, *Barnes*,

and *Missouri DNR*, all of which are cited above, for the proposition that a federal court subpoena to the state "is not a 'suit against the sovereign' because it does not implicate significant federalism concerns." *Id.* at 250–51.

Respectfully, *Charleston Waterkeeper* suffers from the same errors as the cases it cited. While federal and state sovereign immunity may have different origins, states nevertheless are "as exempt as the United States are from private suit." *Belknap*, 161 U.S. at 18. Tribal immunity similarly is "no broader than the protection offered by state or federal sovereign immunity." *Lewis*, 581 U.S. at 164. The nature of a "suit" therefore does not change whether it is under federal, tribal, or state sovereign immunity. If a subpoena is a suit for purposes of federal or tribal sovereign immunity, then it is a suit for state sovereign immunity as well. *See Bonnett*, 714 F.3d at 1160. *Charleston Waterkeeper* also did not consider the threat of contempt behind a subpoena, or that the threat is just as coercive against a state as it is against the federal government (if not more so). By treating states differently than the federal government, the court infringed on the states' status as "joint" sovereigns. The Ports Authority appealed that order, but the appeal was dismissed when the underlying litigation settled before the Fourth Circuit could rule.

In this case, the Court should follow *Russell* and hold that states are immune from subpoenas in federal court, and not follow the other cases which were decided without the benefit of the Fifth Circuit's reasoned analysis and did not address the arguments raised here. Immunizing states from federal court subpoenas is the only conclusion supported by the Constitution and binding precedent. Google's subpoena therefore violates SCPRT's sovereign immunity and should be quashed.

## II. The Attorney General's Involvement in the Underlying Antitrust Case Does Not Waive SCPRT's Sovereign Immunity.

State sovereign immunity can be abrogated by a clear, unequivocal, and lawful act of Congress, where the state agreed to suit in the Constitution itself, or where the state unequivocally expresses consent to suit in federal court. *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2258 (2021); *Seminole Tribe*, 517 U.S. at 55. There is no Congressional waiver applicable to subpoenas served pursuant to Rule 45. Neither did any state consent to federal court subpoenas in the Constitution. *See PennEast Pipeline*, 141 S. Ct. at 2258 (finding such consent for bankruptcy proceedings, suits by other states, and suits by the federal government). SCPRT has not consented to the suit or the subpoena in federal court. The only question remaining is whether the South Carolina Attorney General's participation in the underlying litigation waives SCPRT's sovereign immunity.

The test for whether a state has waived sovereign immunity is a stringent one. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quotation omitted). Waiver may not be implied, and any claim of waiver will be strictly construed in favor of the state. *Id.* at 284–85 (citations and quotations omitted). It is well-established that a state may waive its sovereign immunity by voluntarily litigating a case in federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002). However, sovereign immunity "is a flexible defense with multiple aspects that states can independently relinquish without affecting others." *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013). The state's litigation conduct constituting waiver therefore must be "unambiguous" and "evince a clear choice to submit its rights for adjudication by the federal courts." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 52 (1st Cir. 2003); *see also A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 239 (3d Cir. 2003) (holding waiver must constitute an intentional relinquishment of a known right and courts will indulge every presumption against waiver); *Tegic Commc'ns Corp. v.*

14

*Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1342 (Fed. Cir. 2006) ("While waiver in the litigation context focuses on the litigation act, the waiver must nonetheless be 'clear.'").

State law determines whether the person filing suit in federal court has authority to waive sovereign immunity, while the scope of the waiver once effectuated is a question of federal law. *In re Creative Goldsmiths of Washington, D.C.*, 119 F.3d 1140, 1148 (4th Cir. 1997); *see also Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 25 n.10 (1st Cir. 2001) ("A state official may only waive the state's sovereign immunity during the course of litigation where specifically authorized to do so by that state's constitution, statutes, or decisions."); *cf. Lapides*, 535 U.S. at 621–23 (holding that the authorization to remove a case to federal court is sufficient to waive sovereign immunity when exercised). This Court must defer to a state's determination of how to structure its government and define the powers of those who exercise governmental authority. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The Attorney General's role consequently must be carefully defined to determine whether he has authority to waive SCPRT's sovereign immunity from subpoenas in this case.

Under South Carolina constitutional and statutory law, the Attorney General operates independently of the Governor, who is over agencies like SCPRT. First, they are separate popularly elected constitutional officers. *See* S.C. Const. art. IV, §§ 1, 3 (vesting the Governor with "[t]he supreme executive authority of this State" and establishing that the Governor be popularly elected); S.C. Const. art. VI, § 7 ("There shall be elected by the qualified voters of the State . . . an Attorney General" whose duties "shall be prescribed by law . . . ."). While the Attorney General "has the dual role of serving the sovereign of the State and the general public," he performs these two functions individually. *State ex rel. Condon v. Hodges*, 349 S.C. 232, 242, 562 S.E.2d 623, 629 (2002); *see also Condon v. State*, 354 S.C. 634, 641–41, 583 S.E.2d 430, 434 (2003)

15

(holding the Attorney General's broad power to bring actions on behalf of the state is not "unlimited"). The Attorney General provides advice to the Governor and agency heads upon request, and he can represent executive agencies in court as necessary. *E.g.*, S.C. Code Ann. § 1-7-40; *id.* § 1-7-90; *id.* § 1-7-110. But—underscoring the constitutional separation between the Governor and the Attorney General—the Attorney General can sue the Governor in the interest of the general public without running afoul of any constitutional, statutory, or attorney conflict rules. *E.g., Hodges*, 349 S.C. at 240–42, 562 S.E.2d at 627–29. The Attorney General also cannot automatically appear in a case on behalf of the state and its agencies. *See Condon*, 354 S.C. at 641–42, 583 S.E.2d at 433–34. Like any other person, he must move to intervene under Rule 24, SCRCP, if the state and its agencies are otherwise represented. *Id.* at 642, 583 S.E.2d at 434.

Agencies like SCPRT therefore do not share common executive control with the Attorney General. For example, an SCPRT director answers to and may be removed by the Governor, not the Attorney General. S.C. Code Ann. § 51-1-10(a). The Attorney General, on the other hand, does not answer to the Governor and may be removed only at the ballot box or by impeachment. S.C. Const. art. XV. The Attorney General does not represent South Carolina agencies and does not have custody or control over their records when he brings a lawsuit in the general public's interest. H.B. 3866, 125th Gen. Assemb., Reg. Sess. (2023). The filing of a lawsuit in the general public's interest by a constitutional officer who does not oversee executive agencies does not open the non-public records of every state agency, department, or institution to inspection.

Here, the Attorney General is not proceeding on behalf of the Governor, SCPRT, or any executive agency. Neither is he seeking to recover monetary damages to the state. He instead joined the antitrust case against Google seeking injunctive relief solely in the State's *parens patriae* role on behalf of the general public. He consequently does not represent SCPRT or have

access to its records. The Attorney General may have waived a limited portion of South Carolina's sovereign immunity by becoming a *parens patriae* party to the antitrust case against Google, but he cannot waive the subpoena sovereign immunity of an agency he does not represent and over whose records he does not have custody or control. SCPRT's immunity from federal court subpoenas therefore remains intact.

## CONCLUSION

The federal government is not subject to subpoenas in state court. Indian tribes are not subject to subpoenas either. Because these immunities offer the same protections as state sovereign immunity, the only way to accord states their respect as joint sovereigns is to recognize that state immunity prohibits subpoenas in federal court. This Court therefore should issue an order quashing Google's subpoena to SCPRT on the ground that it violates SCPRT's sovereign immunity, and granting such other relief as is just and proper.

Respectfully submitted,

**WILLOUGHBY HUMPHREY & D'ANTONI, P.A.**

*s/R. Walker Humphrey, II*
R. Walker Humphrey, II, Fed. Bar No. 12524
133 River Landing Drive, Suite 200
Charleston, SC 29492
(843) 619-4426
whumphrey@willoughbyhoefer.com

Mitchell Willoughby, Fed. Bar No. 4702
930 Richland Street (29201)
Post Office Box 8416
Columbia, SC 29202-8416
(803) 252-3300
mwilloughby@willoughbyhoefer.com

March 28, 2023

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| In re: | ) | C/A NO. |
| | ) | |
| South Carolina Department of Parks, Recreation and Tourism | ) ) ) | |
| | ) | |
| *Movant.* | ) | **CERTIFICATE OF SERVICE** |
| _____ | ) ) | |
| In re: C/A No. 1:21-md-03010 (PKC) | ) ) | |
| In re Google Digital Advertising Antitrust Litigation | ) ) ) | |
| In re: C/A No. 1:21-cv-06841 (PKC) | ) ) | |
| State of Texas, et al, | ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | |
| Google, LLC, | ) ) | |
| *Defendant.* | ) ) ) | |

I, Walker Humphrey, as attorney of record for South Carolina Department of Parks, Recreation and Tourism, hereby certify that on the 28th day of March 2023, I served a copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO QUASH** via electronic notice in accordance with the local rules and first class mail addressed as follows:

Jeanette Bayoumi, Esquire
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
jeanette.bayoumi@freshfields.com

Jamie A. Aycock, Esquire
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
jamieaycock@yettercoleman.com

Kay Dannenmaier, Esquire
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
kdannenmaier@yettercoleman.com

March 28, 2023

*s/R. Walker Humphrey, II*
R. Walker Humphrey, II
Willoughby Humphrey & D'Antoni, P.A.